UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIAN YALDO,

               Plaintiff,                                      Hon. Ellen S. Carmody

v.                                               Case No. 1:13-cv-254

DAVID DeKORTE, et al.,

               Defendants.

_____/

## OPINION

This matter is before the Court on <u>Defendant DeKorte's Motion for Summary Judgment</u>. (Dkt. #35).  For the reasons discussed herein, Defendant's motion is **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint.  (Dkt. #1).  In the early morning hours of July 24, 2011, Plaintiff was a customer at the Dublin Square Irish Pub & Restaurant.  Plaintiff purchased items for which he attempted to pay by handing to Tatum Walker a fifty-dollar bill.  Walker gave the fifty-dollar bill to Eric Allchin, who incorrectly concluded that the currency was counterfeit.  The fifty-dollar bill was examined by other employees of the pub at least one of whom also falsely accused Plaintiff of using counterfeit currency.  Allchin refused to return the fifty-dollar bill to Plaintiff, but instead contacted the police.

Officer David DeKorte arrived at the pub shortly thereafter.  DeKorte incorrectly determined that the fifty-dollar bill was counterfeit.  DeKorte also falsely claimed that Plaintiff "was loud, disruptive, and out-of-control."  DeKorte arrested Plaintiff for "loud and boisterous -

disorderly conduct." This charge was subsequently dismissed in return for Plaintiff accepting "responsibility for an unrelated civil infraction charge." Plaintiff was never charged with using, or attempting to use, counterfeit currency.

Plaintiff initiated the present action on March 6, 2013, against David DeKorte, Eric Allchin, and Authentic Properties, LLC, which operates the Dublin Square Irish Pub & Restaurant, asserting various federal and state law claims. Plaintiff's claims against Allchin and Authentic Properties have been dismissed. Defendant DeKorte now moves for summary judgment on the ground that he is entitled to qualified immunity.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## QUALIFIED IMMUNITY STANDARD

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated.

*Id.*  Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996).  The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve.  *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis.  The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity.  *See Callahan*, 555 U.S. at 232.  On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted.  The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right."  *Id.*  The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201).  The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202).  The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful."  *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the defendant can demonstrate that there exists no factual dispute as to whether he violated the plaintiff's rights, he is entitled to qualified immunity. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher,* 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

## ANALYSIS

### I.        False Arrest

Plaintiff alleges claims for false arrest under both federal and state law. To prevail on these claims, Plaintiff must establish that he was arrested and that his arrest was not supported by probable cause. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010); *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003). Defendant DeKorte asserts that he is entitled to qualified immunity because there exists no factual dispute as to whether there existed probable cause to arrest Plaintiff.

A.       When was Plaintiff Arrested

The parties do not dispute that Plaintiff was arrested during his encounter with Defendant DeKorte.  However, before discussing whether there existed probable cause to arrest Plaintiff, it is necessary to first address precisely *when* Plaintiff was placed under arrest as such is relevant to the probable cause determination.  As Defendant is the party seeking relief, the evidence must be interpreted in a light most favorable to Plaintiff.

In his deposition, Plaintiff testified that when Defendant DeKorte arrived at the pub, somebody "pointed out" Plaintiff to DeKorte who immediately approached Plaintiff and placed him in handcuffs.  (Dkt. #39, Exhibit 1 at 51).  This testimony was corroborated by the deposition testimony of Paul Meram and Matthew Meram.  (Dkt. #39, Exhibit 2 at 28-30, 50; Dkt. #39, Exhibit 3 at 21).[1]  Interpreting the evidence in Plaintiff's favor, there is no question that at this juncture of the encounter, Plaintiff was seized by Defendant DeKorte.  *See, e.g., Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir. 2000) (an individual is seized when their liberty is restrained through "the application of physical force").  The question, therefore, becomes whether Defendant's seizure of Plaintiff constituted an arrest, for which there must exist probable cause, or was instead a *Terry* stop (or similar detention) for which probable cause is not required.

For purposes of the Fourth Amendment, a person is considered to be under arrest when "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave."  *United States v. Baker*, 750 F.Supp.2d 921, 929 (W.D. Tenn. 2010) (citations omitted).  Whether a detention of an individual constitutes an arrest is a mixed question of law and fact.  *See, e.g., Gardenhire*, 205 F.3d at 313-14 ("the question is whether a

---

[1]   Defendant has presented no evidence to the contrary.  While Defendant asserts that he did not "arrest" Plaintiff until later in the encounter, he does not dispute Plaintiff's testimony that he placed Plaintiff in handcuffs immediately upon approaching him.

reasonable jury could find that a person in [plaintiff's] position would have felt free to leave");
*United States v. Rabbia*, 699 F.3d 85, 91 (1st Cir. 2012) ("whether a seizure is a de facto arrest. .
.presents a mixed question of law and fact").

   A reasonable juror, if she believes Plaintiff's version of events, could easily conclude
that Plaintiff had been arrested at the moment that he was handcuffed.  *See, e.g., United States v.
White*, 584 F.3d 935, 952-53 (10th Cir. 2009) ("the use of. . .handcuffs. . .generally exceed the scope
of investigative detention and enter the realm of an arrest").  Accordingly, interpreting the evidence
in a light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff was arrested
by Defendant DeKorte at the very outset of their encounter.  The Court further finds that it was
clearly established, as of the date of the incident in question, that the evidence, interpreted in
Plaintiff's favor, establishes that Plaintiff was placed under arrest at the outset of his encounter with
Defendant.

   **B.**  **Was Plaintiff's Arrest Supported by Probable Cause**

   Probable cause to effect a warrantless arrest exists when "the facts and circumstances
known to the officer warrant a prudent man in believing that an offense has been committed."  *Green
v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012).  It must also be remembered, however, that
when assessing whether there existed probable cause to support an arrest, "[t]he facts and
circumstances examined are confined to those within an officer's knowledge *at the time of an
arrest*."  *Stricker v. Township of Cambridge*, 710 F.3d 350, 362-63 (6th Cir. 2013) (emphasis
added).  As Defendant acknowledges, "the existence of probable cause in a § 1983 action presents
a jury question, unless there is only one reasonable determination possible."  *Everson v. Leis*, 556

F.3d 484, 499 (6th Cir. 2009).  Defendant's argument that the only reasonable interpretation of the evidence supports his position is not persuasive.

Defendant DeKorte asserts that he arrested Plaintiff for "violation of the city ordinance which prohibits persons from disturbing the peace by engaging in loud and boisterous conduct."  (Dkt. #35, Exhibit 1).  Given that a reasonable juror could conclude that Plaintiff was immediately arrested by Defendant at the very outset of their encounter, the question becomes whether there existed *at that moment* probable cause to arrest Plaintiff for disturbing the peace.

Defendant asserts that as soon as he entered the pub he observed Plaintiff "yelling and screaming at employees and was basically out of control."  (Dkt. #35, Exhibit 1).  Tatum Walker also asserts that Plaintiff, presumably before the arrival of Defendant DeKorte, "was getting really aggressive and angry and was yelling."  (Dkt. #35, Exhibit 2).  Plaintiff's testimony, however, presents a different version of events.  Plaintiff testified that he was upset and embarrassed at being falsely accused of using counterfeit money, but was "keeping [his] cool" and was under control.  (Dkt. #39, Exhibit 1 at 39-49).  Plaintiff testified that while he was talking loudly, he was doing so simply so he could be heard over the music and other noise in the pub.  (Dkt. #39, Exhibit 1 at 45-46).  Plaintiff testified that the other people with whom he was speaking were likewise speaking rather loudly.  (Dkt. #39, Exhibit 1 at 45-46).  Plaintiff testified that in this respect the level of his voice was "comparable" to the others with whom he was interacting.  (Dkt. #39, Exhibit 1 at 46).  Plaintiff's version of events is supported by the testimony of Paul Meram and Matthew Meram.  (Dkt. #39, Exhibit 2 at 25-26; Dkt. #39, Exhibit 3 at 25-27).

In sum, there exists a genuine dispute of fact as to the relevant events preceding Plaintiff's arrest.  Viewing the evidence in Plaintiff's favor, a reasonable juror could certainly find

that there did not exist probable cause to arrest Plaintiff. The Court also finds that the law in this respect was clearly established as of the date of the events in question. At hearing, Defendant repeatedly asserted that he was entitled to relief because Plaintiff conceded that he was in a dispute with one or more individuals at the pub. The Court is aware of no authority permitting the police to arrest an individual simply for participating in a disagreement. Instead, the law forbids an individual from engaging in a disagreement (or other behavior) in a loud and boisterous manner. It is certainly possible to engage in a disagreement with somebody without engaging in loud and boisterous conduct. While Plaintiff has allegedly conceded the former, there clearly exists a dispute of fact as to the latter.

The Court recognizes that in the qualified immunity context, a "lack of probable cause is not necessarily fatal" if the officer "could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and *the information possessed at the time by the arresting agent.*" *Throckmorton*, 681 F.3d at 865 (emphasis added). Again, viewing the evidence in Plaintiff's favor, a reasonable juror could conclude that it was not reasonable for Defendant DeKorte to believe that arresting Plaintiff at the outset of their encounter was lawful. Accordingly, Defendant's motion for qualified immunity is denied as to Plaintiff's false arrest claims.

Finally, Defendant finds significant the fact that Plaintiff, in his complaint, alleges that he was arrested for alleged counterfeiting rather than for disorderly conduct. Defendant argues that he is entitled to relief because "the only evidence that Officer DeKorte arrested Mr. Yaldo for anything other than his loud and boisterous conduct is the Plaintiff's speculation." (Dkt. #36 at ID# 172-73). First, Defendant's argument misconstrues Plaintiff's theory. It appears that Plaintiff's

theory is that Defendant DeKorte immediately arrested him on the mistaken belief that Plaintiff had, in fact, attempted to use counterfeit currency. However, once Defendant realized that the currency was not counterfeit he attempted to disguise his mistake by alleging, after the fact, that he, in fact, arrested Plaintiff for disorderly conduct.

Defendant's argument also misses the mark. Plaintiff concedes that he does not know the alleged crime for which he was arrested because he was never informed of such. (Dkt. #39, Exhibit 1 at 58). Such is irrelevant, however, because to prevail on his claim of false arrest Plaintiff is not required to demonstrate that he can correctly identify Defendant's subjective beliefs or intent at the moment Defendant decided to affect an arrest. Instead, Plaintiff must demonstrate that he was arrested without probable cause. Defendant DeKorte asserts that he arrested Plaintiff for disorderly conduct and, as the discussion above makes clear, the existence of significant factual disputes precludes granting Defendant the relief sought.[2]

## II.        Malicious Prosecution

Plaintiff alleges claims for malicious prosecution under both federal and state law. The elements for these claims vary slightly depending on the body of law invoked. To prevail on a malicious prosecution claim under federal law, Plaintiff must establish: (1) a criminal prosecution was initiated against him and Defendant "made, influenced, or participated in the decision to prosecute;" (2) there existed a lack of probable cause to support the prosecution; (3) as a consequence of the legal proceeding, Plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in Plaintiff's favor. *See Sykes*, 625 F.3d at

---

[2]    The Court also notes that Defendant has not presented evidence that would support a finding that there existed probable cause to arrest Plaintiff for using, attempting to use, counterfeit currency.

308-09.  Under Michigan law, Plaintiff must prove: (1) Defendant initiated a criminal proceeding against him; (2) the criminal proceeding terminated in his favor; (3) Defendant lacked probable cause to initiate the criminal proceeding; and (4) Defendant acted with malice or for a purpose other than bringing Plaintiff to justice.  *Bloch v. Bloch*, 2013 WL 951076 at *3 (Mich. Ct. App., Mar. 7, 2013).  Defendant DeKorte asserts that he is entitled to qualified immunity because there exists no factual dispute as to whether there existed probable cause to prosecute Plaintiff for disorderly conduct.

For the same reasons discussed above, the Court finds that there exists a genuine factual dispute concerning the relevant events and that a reasonable juror, interpreting the evidence in Plaintiff's favor, could conclude that there did not exist probable cause to prosecute Plaintiff for disorderly conduct.  The Court also finds that the law with respect to Plaintiff's malicious prosecution claim was clearly established as of the date of the relevant events.  Likewise, a reasonable juror could conclude that it was not reasonable for Defendant DeKorte to believe that prosecuting Plaintiff for disorderly conduct was lawful.  Accordingly, Defendant's motion for qualified immunity is denied as to Plaintiff's malicious prosecution claims.

**CONCLUSION**

For the reasons articulated herein, Defendant DeKorte's Motion for Summary Judgment, (dkt. #35), is **denied**.  An Order consistent with this Opinion will enter.

Date: May 29, 2014                              /s/ Ellen S. Carmody
                                              ELLEN S. CARMODY
                                              United States Magistrate Judge